UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARMANDO BELTRAN PRADO,

      Petitioner,

 v.

KIRSTJEN M NIELSEN, et al.,

      Respondents.

Case No. C18-1307-JLR-JPD

REPORT AND RECOMMENDATION

I.  INTRODUCTION

Petitioner, a native and citizen of Mexico who is subject to a final order of removal, brings this 28 U.S.C. § 2241 habeas action to obtain a judicial stay of removal pending the Board of Immigration Appeals' ("BIA") adjudication of his motion to reopen his removal proceedings.[1] The Court temporarily stayed his removal. Dkt. 2.

The Government now moves to dismiss. Dkt. 4. Petitioner did not timely respond, and on the noting date for the motion to dismiss, moved to allow the late filing of his opposition

---

[1] Petitioner's habeas petition also seeks relief related to "his T visa application," Dkt. 1, but the Government has submitted unrefuted evidence that petitioner has never filed such an application, Dkt. 12. Concurrent with this Report and Recommendation, the Court has filed an order granting the Government's motion to supplement the pleadings with this information and directing petitioner's attorney to show cause why she should not be sanctioned for the misrepresentation. Because petitioner has never filed a T visa application, all of his arguments relevant to that application fail and will not be discussed further.

REPORT AND RECOMMENDATION - 1

1  brief. Dkt. 9. Later that day, the Government filed its reply brief opposing the request for an
2  extension of time and asking the Court to dismiss the action. Dkt. 10. Four days later, petitioner
3  filed his response brief. Dkt. 11.

4  Having considered the parties' submissions, the balance of the record, and the governing
5  law, the Court GRANTS petitioner's motion to accept his late-filed brief and recommends that
6  the Government's motion to dismiss be GRANTED, petitioner's habeas petition and motion to
7  stay be DENIED, and the temporary stay of removal be VACATED.

## II. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States without inspection in September 2002. Dkt. 5-1 at 2. His wife is a lawful permanent resident and they have three children, one of whom is a lawful permanent resident and two of whom are U.S. citizens. Dkt. 1 at ¶ 15. He works in construction and is the primary breadwinner for their family. *Id.* at ¶¶ 16, 25.

ICE first encountered petitioner on December 2, 2009, while he was serving a two-day sentence for a domestic violence conviction at the Pierce County Jail. Dkt. 5-1 at 3; *see also* Dkt. 5-2. The same day, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging petitioner with removability because he had not been lawfully admitted or paroled into the United States, and released him on his own recognizance pending resolution of his removal proceedings. Dkts. 5-4, 5-5.

On March 31, 2010, petitioner appeared before the immigration court and conceded removability as charged.[2] Dkt. 5-6 at 2-3. In lieu of removal, petitioner filed applications for

---

[2] Petitioner's attorney during these proceedings has since been disbarred. Dkt. 1 at ¶ 21. At the time of his individual hearing in September 2011, she was suspended and another attorney appeared in her place without informing petitioner. *Id.* Petitioner continued to pay his original attorney and call her for advice even after she was disbarred. *Id.* His current attorney has been representing him since 2016. *See* Dkt. 5-10.

REPORT AND RECOMMENDATION - 2

1   asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

2   *Id.* at 3.  On October 18, 2011, an immigration judge ("IJ") held a merits hearing, denied

3   petitioner's applications, and ordered him removed to Mexico.  Dkt. 5-6 at 15.  On April 5, 2013,

4   the BIA dismissed petitioner's appeal.  Dkt. 5-8.  On May 2, 2013, petitioner filed a petition for

5   review and motion for stay of removal with the Ninth Circuit.  *Beltran-Prado v. Lynch*, No. 13-

6   71548, Dkt. 1 (9th Cir. May. 2, 2013).  The Ninth Circuit stayed his removal.  *Id.* at Dkt. 7.  On

7   July 28, 2015, the Ninth Circuit denied the petition and the stay of removal expired.  *Id.* at Dkts.

8   24, 25.

9         On December 4, 2015, petitioner filed a *pro se* I-246 application for a stay of removal

10  with ICE, arguing that he is the sole support for his wife and three daughters.  Dkt. 5-9; *see also*

11  Dkt. 5-10 (letter from petitioner's counsel and additional documents in support of stay request).

12  On January 23, 2018, ICE denied petitioner's I-246 application.  Dkt. 5-11.

13        ICE originally ordered petitioner to report to its office on February 16, 2018, to receive

14  the stay decision, but at the request of his attorney, the date was changed to March 1, 2018.  Dkt.

15  5-13 at ¶ 3.  On March 1, 2018, ICE served the I-246 application denial letter on petitioner and

16  his attorney.  *Id.* at ¶ 4.  Petitioner's counsel informed ICE that she intended to file a motion to

17  reopen his removal proceedings based on the ineffective assistance petitioner received from his

18  previous attorney, as well as new information regarding a U (crime victim) visa certification.  *Id.*

19  ICE ordered petitioner to report back on June 6, 2018, to follow-up regarding his immigration

20  status, which he did.  *Id.* at ¶¶ 4-5.  At that meeting, ICE informed him and his attorney that he

21  must report on August 6, 2018, with departure plans showing a departure date on or before

22  September 6, 2018.  *Id.*  On August 8, 2018, ICE received confirmation from petitioner's

23

REPORT AND RECOMMENDATION - 3

attorney that he had purchased a plane ticket departing to Mexico on September 4, 2018. *Id.* at ¶ 6.

Petitioner subsequently filed with the BIA a motion to reopen his removal proceedings based on the ineffective assistance of his counsel and the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).[3] Dkt. 1 at ¶ 22. Petitioner also filed an application to stay his removal pending a decision on the motion to reopen. *Id.* On September 4, 2018, the BIA denied petitioner's application to stay, concluding "that there is little likelihood that the motion [to reopen] will be granted." Dkt. 5-12 at 3.

Also on September 4, 2018, petitioner filed the instant habeas petition and an emergency motion for stay of removal. Dkt. 1 at 2; Dkt. 1-13. The Honorable James L. Robart granted a temporary stay of removal and ordered the Government to file a return memorandum addressing petitioner's habeas petition and motion to stay. Dkt. 2.

On October 4, 2018, the Government filed a return memorandum and motion to dismiss. Dkt. 4. On October 22, 2018, the parties filed a joint stipulation and proposed order to modify the briefing schedule because petitioner's attorney had suffered a computer problem and hundreds of her files had been deleted, including all of those related to this case. Dkt. 6. The Court granted the joint stipulation, ordered petitioner to file his response brief by October 29, 2018, and re-noted the Government's motion to dismiss for November 2, 2018. Dkt. 7.

On October 30, 2018, petitioner filed an untimely amended habeas petition. Dkt. 8. On November 2, 2018, petitioner filed a motion to allow the late filing of his response to the

---

[3] Noncitizens who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States may be eligible for cancellation of removal, a form of discretionary relief. *Pereira*, 138 S. Ct. at 1209. In *Pereira*, the Supreme Court held that a Notice to Appear that does not designate the specific time or place of a noncitizen's removal proceedings does not trigger the "stop-time rule" that ends the noncitizen's period of continuous presence in the United States. 138 S. Ct. at 2109-10.

REPORT AND RECOMMENDATION - 4

1  Government's motion to dismiss. Dkt. 9. The same day, the Government filed a reply brief,

2  arguing that the Court should not accept petitioner's tardy amended habeas petition, should deny

3  petitioner's request to file his response brief late, and should grant the motion to dismiss. Dkt.

4  10. On November 6, 2018, petitioner filed his response brief. Dkt. 11.

5  III.    DISCUSSION

6  A.    Preliminary matters

7  There are two preliminary matters the Court must resolve before turning to the merits of

8  petitioner's habeas petition and the Government's motion to dismiss. First, the Government

9  claims that petitioner's amended habeas petition was filed late and should not be accepted. *See*

10  Dkt. 10. Petitioner filed his amended habeas petition several days after the deadline to file

11  without written consent of the Government or leave of the Court. *See* Fed. R. Civ. P. 15(a)(1)(B)

12  ("A party may amend its pleading once as a matter of course within (A) 21 days after serving it,

13  or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a

14  responsive pleading . . . ."); Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its

15  pleading only with the opposing party's written consent or the court's leave."). Petitioner's

16  counsel has acknowledged the error, but she has not obtained the Government's written consent

17  or asked the Court for leave to amend. Because the amended habeas petition was filed in

18  contravention of the Federal Rules of Civil Procedure, the original habeas petition remains the

19  operative pleading.

20  Second, petitioner moves the Court to accept his late-filed response brief. Dkt. 9. The

21  Federal Rules of Civil Procedure provide: "When an act may or must be done within a specified

22  time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has

23  expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Whether

a litigant has established excusable neglect is entrusted to the Court's discretion. *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004). The Court considers four factors: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith. *Id.* at 855 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

In this case, the first three factors favor petitioner. There is no apparent danger of prejudice to the Government beyond a slight inconvenience. The delay was minimal and only minimally impacted the proceedings. The delay was caused by counsel's miscalculation of deadlines in the week following her serious computer malfunction; she has taken responsibility for her mistake, apologized, and acted promptly to remedy the effects. As to the fourth factor, however, petitioner's counsel appears to have misrepresented to the Court that petitioner has a pending T visa application, and this apparent misrepresentation is repeated throughout the response brief. Nevertheless, having weighed the four factors, the Court finds counsel's neglect excusable and GRANTS petitioner's motion to accept his late-filed response brief.

B.      Jurisdiction

Petitioner contends that it would violate substantive and procedural due process to remove him before his motion to reopen is adjudicated. *See* Dkt. 1. The Government argues that 8 U.S.C. § 1252(g) bars the Court from staying petitioner's removal pending resolution of his motion to reopen, and therefore his habeas petition must be dismissed for lack of subject matter jurisdiction. Dkt. 4 at 8-11.

Section 1252(g) states:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas

REPORT AND RECOMMENDATION - 6

> corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter.

8 U.S.C. § 1252(g). The Supreme Court has emphasized that this provision "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion," and applies to only the three discrete listed actions: the commencement of proceedings, adjudication of cases, and execution of removal orders. *Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 485 n.9 (1999) ("*AADC*"); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018).

The Ninth Circuit has interpreted § 1252(g) narrowly and allowed injunctive relief in certain situations. *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (holding that § 1252(g) did not bar district court from entering permanent injunction prohibiting government from commencing removal proceedings against the plaintiff based on new statutory provisions that the plaintiff claimed did not apply to him, reasoning that the "gravamen" of his claim did not arise from the decision to commence proceedings); *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120-21 (9th Cir. 2001) (holding that statute did not bar issuance of a preliminary injunction restricting the implementation of a directive that had halted the grant of suspensions of deportation); *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1149-50 (9th Cir. 2000) (en banc) (rejecting claim that statute deprived the district court of jurisdiction to enter a preliminary injunction); *Barapind v. Reno*, 225 F.3d 1100, 1109-10 (9th Cir. 2000) (holding that statute does not preclude jurisdiction over habeas petition for stay of asylum proceedings); *Walters v. Reno*, 145 F.3d 1032, 1051-52 (9th Cir. 1989) (holding, pre-*AADC*, that district court had jurisdiction to grant permanent injunction prohibiting plaintiffs' removal where plaintiffs brought due

REPORT AND RECOMMENDATION - 7

process challenge to removal proceedings that did not arise from a decision or action to execute removal orders and was instead a "general collateral challenge[] to unconstitutional practices and policies used by the agency"); *but see Garcia-Herrera v. Asher*, 585 Fed. Appx. 439, 440 (9th Cir. 2014) (unpublished) (challenge to ICE's decision not to delay petitioner's removal pending adjudication of his application for the Deferred Action for Childhood Arrivals program "constitutes a challenge to ICE's decision to execute a removal order" and is barred by § 1252(g)).

The Ninth Circuit, however, has not addressed the issue here: whether district courts have jurisdiction to stay a noncitizen's removal pending resolution of a motion to reopen. District courts in this circuit are split.[4] *Compare Ma v. Holder*, 860 F. Supp. 2d 1048, 1057-60 (C.D. Cal. 2012) (concluding that request for stay of removal pending adjudication of the petitioner's motion to reopen was barred by § 1252(g)); *Rodriguez-Henriquez v. Asher*, No. 14-1719, 2015 WL 778115, at *4 (W.D. Wash. Feb. 24, 2015) ("Mr. Rodriguez-Henriquez's request that this Court stay the execution of his final order of removal while he [files a motion to reopen] directly impacts the government's ability to 'execute' his removal order and is thus precluded by § 1252(g)."); *Tarhan v. Dep't of Homeland Sec.*, No. 11-1185, 2011 WL 3703375, at *2 (W.D. Wash. Jul. 15, 2011), *R & R adopted*, 2011 WL 3684644 (W.D. Wash. Aug. 23, 2011) ("A

---

[4] Courts outside of the Ninth Circuit are also split. *Compare e.g. Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018) ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review."); *Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002) (holding that "a request for a stay of removal 'arises from' the Attorney General's decision . . . to execute a removal order," and rejecting petitioners' argument that they were not challenging the underlying removal order and instead only seeking a stay pending a motion to reopen); *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36-37 (D.D.C. 2008) (concluding that request for stay was barred by § 1252(g) despite petitioner's argument that stay was necessary to allow constitutional challenge to removal prior to adjudication of his motion to reopen); *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 121-24 (D.D.C. 2006) (concluding that court did not have jurisdiction to stay removal pending motion to reopen); *with You v. Nielsen*, 321 F. Supp. 3d 451, 457-58 (S.D.N.Y. 2018) (concluding that court had jurisdiction over claim alleging it was unlawful to remove the petitioner while a motion to reopen was pending).

REPORT AND RECOMMENDATION - 8

request to stay an order of removal based on a pending collateral claim does not escape the jurisdiction stripping provisions of the REAL ID Act." (quoting *Mancho v. Chertoff*, 480 F. Supp. 2d 160, 162 (D.D.C. 2007)); *with Sied v. Nielsen*, No. 17-6785, 2018 WL 1142202, *14 - *15 (N.D. Cal. Mar. 2, 2018) (adopting reasoning of *Chhoeun v. Marin*, *infra*, and staying execution of removal order pending resolution of petitioner's motion to reopen); *Chhoeun v. Marin*, No. 17-1898, 2018 WL 566821, at *7 - *9 (C.D. Cal. Jan. 25, 2018) (concluding that court had jurisdiction to stay execution of removal order pending petitioners' motions to reopen and reasoning that the Ninth Circuit has "consistently held that district courts have jurisdiction when, as in this case, petitioners do not directly challenge their orders of removal, but rather assert a due process right to challenge the orders in the appropriate court").

In this case, petitioner is not directly challenging the government's discretionary decision to execute his removal order. Rather, he is raising collateral legal and constitutional challenges to the process by which the government seeks to remove him; he asserts "a due process right to challenge the [removal] order[] in the appropriate court." *Chhoeun*, 2018 WL 566821, at *9. Whether the government's "actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g)." *You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018). Accordingly, the Court concludes that it has jurisdiction.

C.      Substantive due process claim

The Fifth Amendment's due process guarantees "include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (emphasis omitted). Petitioner alleges that he has a substantive due process interest in remaining with his wife and children. Dkt. 1 at ¶

27.     The Ninth Circuit, however, has held that a noncitizen does not have a substantive due process right to live with his family in the United States.[5]  *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504, 516 (9th Cir. 2012) (en banc); *cf. De Mercado v. Mukasey*, 566 F.3d 810, 816 n.5 (9th Cir. 2009) (stating, in dicta, that "family unity" theory of due process in immigration context is "implausible" because "no authority [has been identified] to suggest that the Constitution provides [noncitizens] with a fundamental right to reside in the United States simply because other members of their family are citizens or lawful permanent residents").  Accordingly, petitioner's substantive due process claim fails.

D.     Procedural due process claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  Once a petitioner has identified a liberty or property interest protected by the Constitution, the Court must determine whether constitutionally sufficient procedural protections have been provided.  *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1161 (9th Cir. 2004).  "The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a

---

[5] The court explained:

> To hold otherwise would create a barrier to removing an illegal [noncitizen] like Morales in any case where that [noncitizen] has married a United States citizen wife or fathered United States citizen children.  Stated another way, to indulge this theory is to hold that an illegal [noncitizen] with United States citizen family members cannot be removed, regardless of the illegality of that [noncitizen's] entry into the United States or conduct while within its borders.  Such a remarkable proposition, which would radically alter the status quo of our immigration law, simply cannot be gained by judicial fiat from an intermediate court.  If there is to be such a fundamental change in immigration law, it must originate with the Congress or with the United States Supreme Court, and not at our level of the judiciary.

*Morales-Izquierdo*, 600 F.3d at 1091.

REPORT AND RECOMMENDATION - 10

meaningful manner." *Mathews*, 424 U.S. at 333 (internal quotation and citation omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). In deciding what due process requires in a particular situation, the Court weighs (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Courts have recognized that removal implicates substantial liberty interests, and therefore "[t]he Fifth Amendment guarantees due process in deportation proceedings." *Colmenar v. I.N.S.*, 210 F.3d 967, 971 (9th Cir. 2000); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[It] is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.") (internal quotation marks omitted; alterations added); *C.J.L.G. v. Sessions*, 880 F.3d 1122, 1132 (9th Cir. 2018) ("the private liberty interests involved in [removal] proceedings are indisputably substantial") (quoted source omitted; alteration in original); *Fatty v. Nielsen*, No. 17-1535, 2018 WL 3491278, at *2 (W.D. Wash. July 20, 2018) ("[The petitioner] has a liberty interest in preventing his removal.").

Because petitioner has a protected liberty interest at stake, the Court must determine whether there are sufficient procedural protections in place. Neither party addressed the *Mathews* factors in their briefing, therefore the Court proceeds without the benefit of the parties' arguments. Petitioner has a strong interest in remaining in the United States with his family. *See Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013). There is little risk of an erroneous

deprivation of this interest through the current procedures. Petitioner was ordered removed by an IJ after a hearing, he appealed this determination to the BIA, and then sought review in the Ninth Circuit. He has filed a motion to reopen with the BIA, and he may appeal any adverse determination to the Ninth Circuit. If he is removed to Mexico while his motion to reopen is pending, he may continue to litigate his case from abroad. *See Toor v. Lynch*, 789 F.3d 1055 (9th Cir. 2015); *Reyes-Torres v. Holder*, 645 F.3d 1073 (9th Cir. 2011); *Coyte v. Holder*, 593 F.3d 902 (9th Cir. 2010). Importantly, unlike some cases where noncitizens have presented colorable claims of persecution upon removal, and therefore a likelihood that they would not be able to continue to litigate their motions to reopen, *e.g. Devitri v. Cronen*, 290 F. Supp. 3d 86 (D. Mass. 2017), there is no suggestion in this case that petitioner would be unable to litigate from Mexico. Allowing petitioner to remain in the United States while his motion to reopen is pending is unlikely to provide additional value, in terms of due process protections, and it likely would provide at least some administrative burdens on ICE, which would be required to continue to monitor him. Finally, the government has an interest in executing administratively final removal orders. Weighing the *Mathews* factors, the Court concludes that due process does not require a stay of petitioner's removal pending adjudication of his motion to reopen. Accordingly, he is not entitled to habeas relief.

## IV.    CONCLUSION

The Court GRANTS petitioner's motion to accept his late-filed brief, Dkt. 9. The Court RECOMMENDS that (1) the Government's motion to dismiss, Dkt. 4, be GRANTED, (2) petitioner's habeas petition, Dkt. 1, be DENIED, (3) petitioner's motion to stay, Dkt. 1-13, be DENIED and the temporary stay of removal, Dkt. 2, be VACATED, and (4) this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk and
2 served upon all parties to this suit by no later than **March 6, 2019**. Failure to file objections
3 within the specified time may affect your right to appeal. Objections should be noted for
4 consideration on the District Judge's motion calendar for the third Friday after they are filed.
5 Responses to objections may be filed within **fourteen (14)** days after service of objections. If no
6 timely objections are filed, the matter will be ready for consideration by the District Judge on
7 **March 8, 2019.**

   This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

   Dated this 19th day of February, 2019.

*[signature: James P. Donohue]*

JAMES P. DONOHUE
United States Magistrate Judge